UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
In re:

JERRY CHOEZ,                                                  Chapter 7

and                                                          Case No.: 15-45404-ess

ROSALIN CHOEZ,

                        Debtors.
-------------------------------------------------------------------x
ALLIANCE SHIPPERS, INC.,

                        Plaintiff,

                                          Adv. Pro. No. 16-01015-ess
       -against-

JERRY CHOEZ,

                        Defendant.
-------------------------------------------------------------------x

**MEMORANDUM DECISION ON MOTION TO DISMISS ADVERSARY PROCEEDING
AND REQUEST FOR LEAVE TO REPLEAD**

Appearances:

Ronald Horowitz, Esq.
Ronald Horowitz, Attorney at Law
2561 Moody Boulevard,
Suite D
Flagler Beach, Florida 32136
 *Attorneys for Alliance Shippers, Inc.*

Steven T. Beard, Esq.
Coran Ober P.C.
25-02 Francis Lewis Boulevard
Flushing, New York 11358
 *Attorneys for Jerry Choez*

**HONORABLE ELIZABETH S. STONG**
**UNITED STATES BANKRUPTCY JUDGE**

## Statement of Issues

Before the Court is the motion of Jerry Choez to dismiss the Adversary Proceeding brought by Alliance Shippers, Inc. ("Alliance") against him seeking a determination that the debt initially owed to Alliance's predecessor in interest, Felix Produce Corp. ("Felix Produce"), and now owed to Alliance, is nondischargeable pursuant to Bankruptcy Code Section 523(a)(4).

The matter to be decided by the Court is whether Alliance has pleaded, with the necessary particularity, a plausible claim that Mr. Choez committed a fiduciary defalcation by failing to maintain a trust created by the Perishable Agricultural Commodities Act ("PACA") upon the receipt of produce, so that the debt owed to Felix Produce, and now to Alliance, is nondischargeable under Bankruptcy Code Section 523(a)(4).

## Jurisdiction

Alliance's nondischargeability claim arises under Bankruptcy Code Section 523(a)(4), and is a core matter. 28 U.S.C. § 157(b)(2)(I). And as a core matter, this Court has constitutional authority to enter a final judgment, because Alliance's claim stems "from the bankruptcy itself." *Stern v. Marshall*, 131 S. Ct. 2594, 2618 (2011). For these reasons, this Court has jurisdiction to consider and enter judgment on this claim under 28 U.S.C. § 1334(b) and the Standing Order of Reference dated August 28, 1986, as amended by order dated December 5, 2012, of the United States District Court for the Eastern District of New York.

## Selected Procedural History

The following procedural and background information is taken from the record in this Adversary Proceeding, and familiarity with the record is assumed.

On April 8, 2010, Mr. Choez and his wife Rosalin Choez filed a petition for relief under Chapter 7 of the Bankruptcy Code, Case No. 10-43026.  On May 25, 2010, that case was dismissed pursuant to Bankruptcy Code Section 521(i), and on the following day, the case was closed.

On July 22, 2010, the Debtors filed a second petition for relief under Chapter 7 of the Bankruptcy Code, Case No. 10-46896.  On September 8, 2010, that case was likewise dismissed pursuant to Bankruptcy Code Section 521(i), and on September 20, 2010, the case was closed.

On November 30, 2015, the Debtors filed a third petition for relief under Chapter 7 of the Bankruptcy Code, Case No. 15-45404.  This case followed a different path, and on December 28, 2015, the Chapter 7 Trustee, Robert J. Musso, filed a report of no distribution, and on February 24, 2016, the Debtors received a discharge.

On January 19, 2016, prior to discharge, Alliance filed this Adversary Proceeding, seeking a finding that the debt at issue here is nondischargeable.

### The Requested Relief

By this motion to dismiss, Mr. Choez seeks an order pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, made applicable here by Bankruptcy Rule 7012(b), dismissing this Adversary Proceeding with prejudice for failure to state a claim upon which relief may be granted.

### Background

#### *The District Court Default Judgment*

Mr. Choez, one of the Debtors and the Defendant here, "owned and operated New Lots Food Corp" ("New Lots Food"), a business that was engaged in, among other things, the sale of produce.  Def's Mem. of Law Filed in Supp. 5 ("Def's Mem.").  Felix Produce brought an action

in the United States District Court for the Eastern District of New York against New Lots Food

and Mr. Choez seeking payment under PACA for perishable agricultural commodities that Felix

Produce sold to New Lots Food.  On September 16, 2009, the United States District Court for the

Eastern District of New York entered a default judgment in favor of Felix Produce and against

New Lots Food and Mr. Choez, jointly and severally, in the amount of $30,549.70 (the "EDNY

Default Judgment").

*The New Jersey Default Judgment*

Alliance brought an action in the Superior Court of New Jersey Law Division, Middlesex

County against Felix Produce, among others, to collect on a debt owed to Alliance.  On October

11, 2013, the Superior Court of New Jersey Law Division, Middlesex County entered a default

judgment in favor of Alliance and against Felix Produce, among others, in the amount of $23,330

(the "New Jersey Default Judgment").  Pl's Mem. of Law Filed in Opp'n. to Def's Mot. to

Dismiss and Decl. Ex. G, at 2 ("Pl's Opp. Mem.").

Alliance brought a second action in the Superior Court of New Jersey Law Division,

Middlesex County, against Mr. Choez and New Lots Food, to collect on the EDNY Default

Judgment.  On October 20, 2015, that Court entered a default judgment in favor of Alliance and

against Mr. Choez and New Lots Food, among others, in the amount of $25,723 (the "Second

New Jersey Default Judgment").  Pl's Opp. Mem. Ex. H, at 1.

*This Bankruptcy Case and Adversary Proceeding*

On November 30, 2015, the Debtors filed the present petition for relief under Chapter 7

of the Bankruptcy Code.  On January 19, 2016, Alliance commenced this Adversary Proceeding

by filing a complaint dated December 18, 2016.  On January 19, 2016, Mr. Choez filed this

Motion to Dismiss.  On January 21, 2016, the Clerk's Office issued the summons and notice of

pre-trial conference.  The answer was due on February 22, 2016, and the first pre-trial conference

was set for March 15, 2016.  On February 3, 2016, Alliance filed a memorandum of law in

opposition to the Motion to Dismiss.  On February 11, 2016, and February 29, 2016, the Court

held hearings on the Motion to Dismiss, at which Mr. Choez and Alliance, each by counsel,

appeared and were heard.

On May 18, 2016, Alliance, by counsel, filed a letter advising the Court of the recent

Supreme Court decision *Husky International Electronics, Inc. v. Ritz,* 136 S. Ct. 1581 (2016).  In

its letter, Alliance argued that following the reasoning of the Supreme Court's ruling, "fraudulent

conveyance schemes, breaches of fiduciary duty acting in a fiduciary capacity, now are subject to

less vigorous pleading and proof standards."  Pl's Letter at 2.  That same day, Mr. Choez, by

counsel, filed a letter in response stating that *Husky International* does "not dictate or resolve any

legal or factual questions at issue in this proceeding."  Def's Letter at 2.

### The Allegations of the Complaint

In the Complaint, Alliance alleges that Krisp-Pak Sales Corp. ("Krisp-Pak") was engaged

in the business of selling, and Felix Produce was in the business of buying, wholesale quantities

of perishable agricultural commodities in interstate commerce as those terms are understood

under PACA.  Specifically, Alliance alleges that Krisp-Pak sold and delivered perishable

agricultural commodities valued at $23,330 to Felix Produce, and that it obtained the New Jersey

Default Judgment against Felix Ceballos, individually and as agent of Felix Produce, in the

amount of $23,330.  Alliance also alleges that on March 6, 2015, it obtained an order permitting

it to collect on Felix Produce's default judgment against Mr. Choez and New Lots Food.

Alliance states that pursuant to Bankruptcy Code Section 523(a)(4), a debt incurred by a

debtor arising from a fraud or defalcation while acting in a fiduciary capacity shall be

nondischargeable. Alliance alleges that at all relevant times, New Lots Food was acting as a produce dealer under PACA. As a result, a PACA trust was created by these transactions and Mr. Choez had a fiduciary obligation to maintain that PACA trust and pay for its produce promptly. Alliance states that Mr. Choez breached his fiduciary obligation when he failed to ensure that New Lots Food complied with PACA and made prompt payment to Felix Produce. Alliance alleges that Mr. Choez's failure to pay for its produce establishes that Mr. Choez dissipated the PACA trust and violated his statutory, regulatory, and contractual duties to preserve and turnover those assets to Felix Produce, and in the same way, to Alliance.

For these reasons, Alliance asks this Court to determine that pursuant to Bankruptcy Code Section 523(a)(4), the entire debt owed by Mr. Choez, in the amount of $30,735.45 is not dischargeable in this Chapter 7 bankruptcy case.

## The Motion to Dismiss

Mr. Choez filed this Motion to Dismiss on January 19, 2016. Mr. Choez argues that in order for a creditor to invoke the dischargeability exception under Bankruptcy Code Section 523(a)(4), three elements must be alleged. First, the debt must result from a fiduciary's defalcation under an express or technical trust, involving the entrusting of money or other property to a fiduciary for the benefit of another. Second, the debtor must have acted in a fiduciary capacity with respect to the trust. And finally, the transaction in question must be a defalcation within the meaning of bankruptcy law.

With respect to the first element, whether the debt results from a fiduciary's defalcation under an express or technical trust involving the entrusting of money or other property to a fiduciary for the benefit of another, Mr. Choez argues that Alliance has not adequately alleged the existence of an express or technical trust. He states that Alliance may not rely on the issue-

preclusive effect of the EDNY Default Judgment to allege the existence of an express or

technical trust, because default judgments entered by federal courts "do not preclude litigation of

the same issues in subsequent proceedings."  Def's Mem. 7.  Mr. Choez also argues that Alliance

does not adequately allege either of the two methods for establishing the existence of a PACA

trust.

      As to the first method, Mr. Choez states that Alliance must allege that Felix Produce held

a PACA license at the time of its transactions with him, and that Felix Produce set forth certain

statutory language on the billing invoices it sent to him.  Mr. Choez argues that Alliance does not

allege that Felix Produce held a PACA license at the time of these transactions, and similarly

does not allege that the invoices set forth the necessary statutory language.  As to the second

method, Mr. Choez states that Alliance must allege that Felix Produce gave notice to him within

thirty days of shipment that it intended to preserve the benefits of a PACA trust.  He argues that

Alliance does not allege that Felix Produce provided the required notice to him.  For these and

other reasons, Mr. Choez argues that Alliance does not allege sufficient facts to establish a

plausible claim that the debt at issue here resulted from his defalcation under an express or

technical trust involving the entrusting of money or other property to a fiduciary for the benefit

of another.

      With respect to the second element, whether the debtor acted in a fiduciary capacity with

respect to the trust, Mr. Choez argues that Alliance does not adequately allege that he and New

Lots Food acted in a fiduciary capacity with respect to a trust for substantially the same reasons

that its allegations as to the first element fall short.  That is, he states that inasmuch as Alliance

does not adequately allege the existence of a PACA trust, Alliance similarly does not adequately

allege that either Mr. Choez or New Lots Food owed a fiduciary duty to it as the beneficiary of such a trust.

With respect to the third element, whether the transaction in question is a defalcation within the meaning of bankruptcy law, Mr. Choez argues that Alliance does not adequately allege that the obligation at issue arose from his defalcation.  Mr. Choez argues that in this Circuit, courts equate defalcation with scienter, and the Complaint does not set forth facts sufficient to show that he had the intent to engage in fraud, wrongful conduct, or conscious misbehavior.  Mr. Choez also argues that the Complaint does not set forth facts sufficient to support an inference that he acted with the necessary intent or recklessness to satisfy the intent component of this element of Alliance's claim.

## The Opposition

On February 3, 2016, Alliance filed its opposition to the Motion to Dismiss.  Alliance states that the Complaint need only set forth a short and plain statement of the claims that are asserted, in order to provide Mr. Choez with the information necessary to respond, and therefore, it withstands scrutiny under Rule 12(b)(6).  Alliance argues that the Complaint adequately alleges each of the elements of a Section 523(a)(4) claim, that there was a PACA trust, that Mr. Choez had a fiduciary obligation to maintain the PACA trust, and that Mr. Choez breached his fiduciary duty when New Lots Food did not pay for its produce promptly.  Alliance argues that the EDNY Default Judgment against Mr. Choez is adequate to allege the third element of this claim, that Mr. Choez breached a fiduciary duty.  And Alliance argues that Mr. Choez improperly relies on authority from the Third and Eleventh Circuits, and ignores controlling case law with respect to the preclusive effect of the EDNY Default Judgment.

Alliance also argues that "to satisfy the requirements of Rule 9(b), the plaintiff must set forth specific facts that support the claims asserted in the complaint . . . [and] based on the allegation in the Complaint herein, Alliance amply satisfies its pleading obligations."  Pl's Opp. Mem. at 6.  In substance, Alliance argues that the Complaint, taken as a whole, meets the heightened pleading standard of Federal Rule of Civil Procedure 9(b).

And finally, Alliance argues that dismissal with prejudice would be a harsh remedy at this early stage in these proceedings, and requests that if the Court determines that Alliance's pleadings are insufficient, the Court should grant it leave to replead.

### The Applicable Legal Standard

*Federal Rule of Civil Procedure 12(b)(6)*

Federal Rule of Civil Procedure 12(b)(6), made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure Rule 7012, states that a complaint must contain a claim upon which relief can be granted.  As the Supreme Court has stated, to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Applying *Iqbal*, courts in the Circuit have concluded that plausibility "'is not akin to a probability requirement,' rather, plausibility requires 'more than a sheer possibility that a defendant has acted unlawfully.'"  *Gowan v. The Patriot Group, LLC (In re Dreier LLP)*, 452 B.R. 391, 406 (Bankr. S.D.N.Y. 2011) (quoting *Iqbal*, 556 U.S. at 677).  And the Supreme Court has explained that the "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted).

In understanding this review, the court accepts all factual allegations as true and draws all reasonable inferences in favor of the non-moving party. *DiFolco v. MSNBC Cable, LLC*, 622 F.3d 104, 110-11 (2d Cir. 2010).  The court then considers whether these well-pleaded factual allegations state a "plausible claim for relief."  *In re Dreier*, 452 B.R. at 407.

In applying these standards, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Iqbal*, 556 U.S. at 678.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.

### *Federal Rule of Civil Procedure 9(b)*

Federal Rule of Civil Procedure 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.  Malice, intent, knowledge, and other condition of mind of a person may be averred generally."  Fed. R. Civ. P. 9(b).  When, as may be the case here, an element of a claim is grounded in fraud, a plaintiff must plead the element with the particularity required by Rule 9(b), made applicable to this proceeding by Bankruptcy Rule 7009(b).  *See Atlanta Shipping Corp., Inc. v. Chem. Bank*, 818 F.2d 240, 251 (2d Cir. 1987).

To satisfy the pleading requirements of Rule 9(b), "[t]he time, place, and nature of the misrepresentations must be set forth so that the defendant's intent to defraud" is evident in the complaint.  *Ross v. Bolton*, 904 F.2d 819, 823 (2d Cir. 1990).  As one bankruptcy court noted, "[t]here are three goals which Fed. R. Civ. P. 9(b) seeks to accomplish, namely, (1) to provide a defendant with fair notice of plaintiff's claim to enable preparation of his defense; (2) protect the defendant from harm to his reputation or goodwill; and (3) to reduce the number of strike suits."

*Flexi-Van Leasing, Inc. v. Perez (In re Perez)*, 173 B.R. 284, 294 (Bankr. E.D.N.Y. 1994)

(citation omitted).

While intent may be alleged generally, the Second Circuit has nonetheless held that a

plaintiff must "'allege facts that give rise to a strong inference of fraudulent intent.'"

*Morgenstein v. Motors Liquidation Co*. (*In re Motors Liquidation Co*.), 462 B.R. 494, 506

(Bankr. S.D.N.Y. 2012) (quoting *Shields v. Citytrust Bancorp.*, *Inc.,* 25 F.3d 1124, 1128 (2d Cir.

1994).

### *Bankruptcy Code Section 523(a)(4)*

Bankruptcy Code Section 523(a)(4) provides that a "discharge under Section 727 of this

title does not discharge an individual debtor from any debt for fraud or defalcation while acting

in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). That is, a debt

arising from fraud or defalcation while acting in a fiduciary capacity may not be discharged in

bankruptcy. This "dischargeability provision has for more than a century been construed

narrowly and strictly by the Supreme Court." *Owens v. Owens* (*In re Owens*), 2005 WL 387258,

at *4 (S.D.N.Y. Feb. 17, 2005) (quoting *In re Gans*, 75 B.R. 474, 488 (Bankr. S.D.N.Y. 1987)),

*aff'd*, 155 F. App'x 42 (2d Cir. 2005).

To state a plausible Section 523(a)(4) claim, a plaintiff must allege three elements. First,

the debt must arise in connection with an express or technical trust involving the entrusting of

money or other property to a fiduciary for the benefit of another; second, the debtor must have

acted in a fiduciary capacity with respect to the trust; and third, the transaction in question must

be a "defalcation" within the meaning of bankruptcy law. *Chao v. Duncan* (*In re Duncan)*, 331

B.R. 70, 77 (Bankr. E.D.N.Y. 2005).

10

Finally, in order to prevail on a nondischargeability claim under Section 523(a)(4), the party claiming nondischargeability has the burden of persuasion, which must be met by a preponderance of the evidence.  *Grogan v. Garner*, 498 U.S. 279, 291 (1991).

The Supreme Court recently clarified the meaning of defalcation as it is used in the bankruptcy context.  In *Bullock v. Bankchampain, N.A.,* 133 S. Ct. 1754 (2013), the Supreme Court held that "defalcation" in this context requires scienter, "a culpable state of mind requirement akin to that which accompanies application of the other terms in the same statutory phrase" such as fraud, embezzlement, and larceny.  *Bullock*, 133 S. Ct. at 1757.  Applying *Bullock*, the Second Circuit has observed that "defalcation under 11 U.S.C. § 523(a)(4) requires a showing that the faithless fiduciary committed an 'intentional wrong,' which incorporates a standard of conscious misbehavior or extreme recklessness."  *Ke v. Wang*, 628 Fed. App'x 10 (2d Cir. 2015) (quoting *Bullock*, 133 S. Ct. at 1759).

For this element to be alleged, the Supreme Court has specified that the fiduciary must have acted with actual knowledge, with "willful blindness," or with "bad faith, moral turpitude, or other immoral conduct."  *Bullock*, 133 S. Ct. at 1756.  The Supreme Court rejected the notion that a lower threshold for "defalcation" should apply in the context of Section 523(a)(4), noting that such a definition would capture "even innocent acts of failure to fully account for money received in trust," and would not be appropriate here.  *Bullock*, 133 S. Ct. at 1758.

To similar effect, the Second Circuit held "that defalcation under [Bankruptcy Code Section] 523(a)(4) requires a showing of conscious misbehavior or extreme recklessness – a showing akin to the showing required for scienter in the securities law context."  *Denton v. Hyman* (*In re Hyman*), 502 F.3d 61, 68 (2d Cir. 2007).  In the securities fraud context, the Second Circuit has explained that a "strong inference" of fraudulent intent may be satisfied either

11

"(a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 168-69 (2d Cir. 2000) (quoting *Shields*, 25 F.3d at 1129-30).

As the Second Circuit noted, "requiring the courts to make appropriate findings of conscious misbehavior or recklessness in the course of dischargeability litigation . . . insures that the harsh sanction of nondischargeability is reserved for those who exhibit 'some portion of misconduct.'" *In re Hyman,* 502 F.3d at 68-69 (quoting *Cent. Hanover Bank & Trust Co. v. Herbst*, 93 F.2d 510, 512 (2d Cir. 1937)). And the Circuit explained that this "standard does not reach fiduciaries [who failed in their duties] only as a consequence of negligence, inadvertence or similar conduct not shown to be sufficiently culpable." *In re Hyman*, 502 F.3d at 69. Expanding on this point, one court noted that courts in this Circuit "require a level of fault greater than mere negligence" or "an innocent mistake." *Grow Up Japan, Inc. v. Yoshida* (*In re Yoshida*), 435 B.R. 102, 110 (Bankr. E.D.N.Y. 2010).

That is, as this Court observed, "at a minimum, a defalcation for purposes of Section 523(a)(4) must arise from conduct that justifies the substantial penalty of denial of dischargeability." *In re Duncan*, 331 B.R. at 87. Defalcation "requires a showing of 'conscious misbehavior or extreme recklessness.'" *Rahman v. Seung Min Park* (*In re Seung Min Park*), No. 10-8040-dte, 2011 WL 1344495, at *4 (Bankr. E.D.N.Y. Apr. 8, 2011) (quoting *In re Hyman*, 502 F.3d at 68).

In other words, in order to survive scrutiny under a Rule 12(b)(6) motion to dismiss, the complaint must set forth a plausible claim that the debtor committed an intentional wrong which, at a minimum, involves the conscious disregard of "'a substantial and unjustifiable risk' that his

conduct will turn out to violate a fiduciary duty." *Bullock*, 133 S. Ct. at 1759-60 (quoting Model Penal Code § 2.02(2)(c) (1985)).

As the parties note, most recently, in *Husky International*, the Supreme Court held that "the phrase 'actual' fraud in Section 523(a)(2)(A) . . . encompass[es] fraudulent conveyance schemes, even when those schemes do not involve a false representation." *Husky Int'l*, 136 S. Ct. at 1590. Every decision of the Supreme Court in the interpretation and application of the Bankruptcy Code produces useful guidance to courts. *Husky International* is no exception, and *Husky International* reminds us that "Section 523(a)(4) . . . covers only debts for fraud while acting as a fiduciary, whereas § 523(a)(2)(A) has no similar limitation." *Husky Int'l*, 136 S. Ct. at 1588. At the same time, the Supreme Court's holding in *Husky International* does not change the elements of a Section 523(a)(4) claim and similarly does not address or modify *Bullock*, the Supreme Court's recent decision addressing Section 523(a)(4) directly.

### Discussion

Alliance alleges, in substance, that the debt owed to it by Mr. Choez is nondischargeable because it arose from his defalcation while acting in a fiduciary capacity, in connection with a PACA trust. On this Motion to Dismiss, the question to be answered by the Court is whether Alliance has met the pleading standard of Rule 12(b)(6) with respect to its Section 523(a)(4) dischargeability claim. That is, the Court considers whether a plausible claim has been stated – not whether it has been proved.

The Perishable Agricultural Commodities Act was enacted in 1930 during the Great Depression, and reflected the intent of Congress to protect and promote fair trade in the fruit and vegetable industry. PACA protects the interests of sellers of perishable agricultural commodities, by requiring purchasers to hold the proceeds of these products in trust for the

sellers until they are paid.  As described by the Second Circuit, "[t]he statute provides growers and sellers of agricultural produce with a 'self-help tool enabling them to protect themselves against the abnormal risk of losses resulting from slow-pay and no-pay practices by buyers or receivers of fruits and vegetables'" (quoting *D.M. Rothman & Co. v. Korea Commercial Bank of N.Y.*, 411 F.3d 90, 93 (2d Cir. 2005).  PACA intersects with the Bankruptcy Code when entities and individuals whose business dealings are governed by PACA are involved in a bankruptcy case, and the rights and obligations created by PACA may affect whether certain debts are dischargeable.

Pursuant to Bankruptcy Code Section 523(a)(4), a debtor will not receive a discharge under Bankruptcy Code Section 727 for a debt that is the result of the debtor's fraud or defalcation while acting in a fiduciary capacity.  Accordingly, and as noted, to succeed in stating a Section 523(a)(4) claim, Alliance must adequately allege three elements.  First, Alliance must allege that the debt at issue here arose in connection with an express or technical trust involving the entrusting of money or other property to a fiduciary for the benefit of another; second, Alliance must allege that Mr. Choez acted in a fiduciary capacity with respect to that trust, here a PACA trust; and third, Alliance must allege that the conduct at issue constituted a "defalcation" within the meaning of bankruptcy law.  *In re Duncan*, 331 B.R. at 77.

*Whether Alliance Adequately Alleges that the Debt Was Incurred in Connection with an Express or Technical Trust*

The first element that Alliance must allege to state a Section 523(a)(4) claim is that the debt at issue arose in connection with an express or technical trust involving the entrusting of money or other property to the fiduciary for the benefit of another.  *In re Duncan*, 331 B.R. at 77.

In the Complaint, Alliance alleges that the debt at issue arose when New Lots Food did not pay for perishable agricultural commodities, specifically produce that it received from Felix

Produce.  Alliance also alleges that a trust was created under PACA because New Lots Food

held the sales proceeds in trust for Felix Produce until Felix Produce was paid.

Mr. Choez argues that Alliance has not adequately alleged the existence of an express or

technical trust, and Alliance may not rely on any issue-preclusive effect of the EDNY Default

Judgment.

At the pleading stage, Alliance is not required to *prove* the existence of a trust to assert

this element of its claim.  Rather, Alliance is required only to allege the existence of an "express

or technical trust."

Under PACA Section 499e(c)(2):

> perishable agricultural commodities received by a commission merchant, dealer, or
> broker in all transactions, and all inventories of food or other products derived from
> perishable agricultural commodities, and *any receivables or proceeds from the sale
> of such commodities or products*, shall be held by such commission merchant,
> dealer, or broker in trust for the benefit of all unpaid suppliers or sellers of such
> commodities

7 U.S.C. § 499(c)(2) (emphasis added).  As Chief Judge Craig has found, a "trust imposed under

PACA is a technical trust for purposes of satisfying the fiduciary capacity requirement under

§ 523(a)(4)."  *E. Armata, Inc. v. Parra (In re Parra)*, 412 B.R. 99, 105 (Bankr. E.D.N.Y. 2009).

Other courts that have addressed this question in reported decisions are in accord.  *See A.J.

Rinella & Co. v. Bartlett (In re Bartlett)*, 397 B.R. 610, 620 (Bankr. D. Mass. 2008); *Collins

Bros. Corp. v. Perrine (In re Perrine),* No. 05-10816-WHD, 2007 Bankr. LEXIS 3727, *7

(Bankr. N.D. Ga. Sept. 27, 2007); *KGB Int'l, Inc. v. Watford* (*In re Watford),* 374 B.R. 184, 190-

191 (Bankr. M.D.N.C. 2007); *General Produce, Inc. v. Tucker* (*In re Tucker),* No. 06-50092-

JDW, 2007 WL 1100482, *2 (Bankr. M.D. Ga. Apr. 10, 2007).  And this Court agrees that for

these purposes, a PACA trust is a "technical trust" within the meaning of Section 523(a)(4).

Here, a review of the Complaint shows that Alliance has alleged the existence of a trust, that the trust was formed pursuant to PACA and that the trust is a "technical trust" within the scope of Section 523(a)(4). For these reasons, the Court concludes that Alliance has adequately alleged the first element of a claim under Section 523(a)(4), the existence of an express or technical trust.

*Whether Alliance Adequately Alleges that Mr. Choez Acted in a Fiduciary Capacity with Respect to that Trust*

The second element that Alliance must allege to state a Section 523(a)(4) claim is that Mr. Choez acted in a fiduciary capacity with respect to the trust at issue.

In the Complaint, Alliance alleges that a PACA trust was formed as a result of the transactions between Mr. Choez and Felix Produce, and that Mr. Choez had a fiduciary duty and acted in a fiduciary capacity with respect to that trust.

Mr. Choez argues that Alliance has not adequately alleged the existence of a trust, and therefore, Alliance does not allege that he owed a fiduciary duty to such a trust.

At the outset and, as articulated by the statute itself, PACA creates an obligation on a dealer to preserve in trust "any receivables or proceeds from the sale of such commodities or products." 7 U.S.C. § 499e(c)(2). At the pleading stage, the question is not what Alliance could ultimately prove, but whether Alliance has adequately alleged each element of a plausible claim.

With respect to the meaning of "'fiduciary capacity,' the Court must look to federal law in determining the meaning of this term in the context of a 523(a)(4) claim." *In re Parra*, 412 B.R. at 104. As one bankruptcy court has noted, "a debtor will be considered a fiduciary for dischargeability purposes if the debtor is a trustee either under an express or technical trust." *In re Bartlett*, 397 B.R. at 619 (citation omitted).

Here, Alliance alleges that the transactions between Mr. Choez and Felix Produce gave rise to a PACA trust.  And as courts have consistently found, a PACA trust is a "technical trust" for the purposes of Section 523(a)(4).  Alliance also alleges that Mr. Choez had a fiduciary "obligation to maintain the PACA Trust and pay for its produce in a prompt matter."  Complaint p. 3.  That is, a review of the Complaint shows that Alliance has alleged that a PACA trust was created and that Mr. Choez owed a fiduciary obligation to that trust.  For these reasons, the Court concludes that Alliance has adequately alleged the second element of a claim under Section 523(a)(4), that Mr. Choez acted in a fiduciary capacity with respect to the trust at issue here, the PACA trust.

### *Whether Alliance Adequately Alleges that Mr. Choez's Conduct Was a Defalcation Within the Meaning of Bankruptcy Law*

The third element that Alliance must allege to state a Section 523(a)(4) claim is that the debt arose from misconduct by Mr. Choez that constitutes a "defalcation" within the meaning of bankruptcy law.  *In re Duncan*, 331 B.R. at 77.

The Supreme Court has recently clarified the meaning of this term within the bankruptcy context.  It held that "defalcation" in this context requires scienter, "a culpable state of mind requirement akin to that which accompanies application of the other terms in the same statutory phrase" such as fraud, embezzlement, and larceny.  *Bullock*, 133 S. Ct. at 1757.  For this element to be alleged adequately, the Supreme Court has specified that the fiduciary must have acted with actual knowledge, with "willful blindness," or with "bad faith, moral turpitude, or other immoral conduct."  *Bullock*, 133 S. Ct. at 1756.

Mr. Choez argues that Alliance does not plead "any specific facts that would convince the court that even if [he] was acting in a fiduciary capacity, that he had any intent to engage in

any fraud, wrongful conduct, or that there was any evidence that [he] engaged in any conscious misbehavior or was reckless." Def's Mem. 11.

Alliance responds in substance, that this element, too, is adequately alleged in the Complaint, and states that "to satisfy the requirements of Rule 9(b), the plaintiff must set forth specific facts that support the claims asserted in the complaint . . . [and] based on the allegation in the Complaint herein, Alliance amply satisfies its pleading obligations." Pl's Opp. Mem. at 6. That is, Alliance argues that the Complaint as a whole meets the heightened pleading standard of Rule 9(b), including with respect to the element of Mr. Choez's intent.

Here, a review of the Complaint shows that Alliance alleges that Mr. Choez controlled New Lots Food's "financial dealings" and that Mr. Choez's "failure and inability to pay" Felix Produce "established that [he] dissipated the PACA trust now belonging to [Alliance]." Complaint p. 4. Alliance also alleges that there was a trust, that Mr. Choez acted in a fiduciary capacity with respect to that trust, and that Mr. Choez perpetrated a "fraud or defalcation" under Section 523(a)(4) when he did not pay Felix Produce for the perishable agricultural commodities. That is, Alliance asks this Court to infer that Mr. Choez acted with actual knowledge, with willful blindness or with bad faith, moral turpitude, or other immoral conduct when this obligation went unpaid.

But defalcation in the context of Bankruptcy Code Section 523(a)(4) requires actual intent or, at a minimum, the conscious disregard of "'a substantial and unjustifiable risk' that [the individual's] conduct will turn out to violate a fiduciary duty." *Bullock*, 133 S. Ct. at 1759-60 (quoting Model Penal Code § 2.02(2)(c) (1985)). As a consequence, and as other courts have held, not every failure to pay for perishable agricultural commodities necessarily constitutes a fiduciary defalcation for purposes of Section 523(a)(4). As one bankruptcy court noted, "[t]he

'standard does not reach fiduciaries who may have failed to account for funds or property for which they were responsible only as a consequence of negligence, inadvertence or similar conduct not shown to be sufficiently culpable.'" *Chitester v. Watterson* (*In re Watterson*), 524 B.R. 445, 453 (Bankr. E.D.N.Y. 2015) (quoting *In re Hyman*, 502 F.3d at 69). *See H. Brooks and Co. v. Yerges (In re Yerges)*, No. 13-10813-7, 2014 WL 1803395, at *7 (Bankr. W.D. Wis. May 6, 2014) (holding that "[i]n light of *Bullock,* it is clear that the Plaintiff's position, that any breach of a PACA-related fiduciary duty is per se defalcation for purposes of Section 523(a)(4), is incorrect.").

To allege this element of its claim, then, Alliance must allege that Mr. Choez acted with actual knowledge, with "willful blindness," or with "bad faith, moral turpitude, or other immoral conduct." *Bullock*, 133 S. Ct. at 1756.

Here, Alliance offers only general and conclusory statements as to Mr. Choez's conduct. At the most, Alliance avers that Mr. Choez, as trustee of a PACA trust, knew or should have known that so long as the debt to Felix Produce remained unpaid, the proceeds from the produce purchased from Felix Produce were held in trust pursuant to PACA for the benefit of Felix Produce. As the Supreme Court observed in *Iqbal,* "recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to set forth a plausible claim for relief. *Iqbal*, 556 U.S. at 678.

Similarly, to the extent that the heightened pleading standard of Rule 9(b) applies here the Complaint does not allege the "[t]he time, place, and nature of the misrepresentations" allegedly committed by Mr. Choez so that his intent to defraud is evident in the Complaint. *Ross*, 904 F.2d at 823.

For these reasons, the Court concludes that Alliance has not adequately alleged facts sufficient to state the third element of a Section 523(a)(4) claim, that Mr. Choez's conduct amounted to a defalcation within the meaning of the Bankruptcy Code.

*          *          *

In sum, and based on the entire record, the record shows that Alliance has adequately alleged the first and second elements of a Section 523(a)(4) claim, that the debt at issue arose in connection with an express or technical trust involving the entrusting of money or other property to a fiduciary for the benefit of another, and that Mr. Choez acted in a fiduciary capacity with respect to that trust.  But the record also shows that Alliance has not adequately alleged the third element of its Section 523(a)(4) claim, that Mr. Choez engaged in the kind of willful conduct that would render the transaction in question a defalcation within the meaning of bankruptcy law.  For these reasons, the Court concludes that Alliance has not adequately alleged a claim under Section 523(a)(4).

<u>Whether Leave To Replead Is Warranted</u>

Rule 15 of the Federal Rules of Civil Procedure, made applicable here by Bankruptcy Rule 7015, states that permission to amend a complaint should be freely granted "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  As the Supreme Court observed more than fifty years ago, "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits."  *Foman v. Davis*, 371 U.S. 178, 182, (1962).

And as this Court has noted, "[w]here a plaintiff has made a single attempt to state a claim, and the prospect of a plausible claim is suggested, but not established, by the allegations, then it may be that a court's discretion should tip in favor of allowing an amendment."  *Ridley v.*

20

*Deutsche Bank National Trust Co.* (*In re Ridley*), 453 B.R. 58, 77 (Bankr. E.D.N.Y. 2011).  At

the same time, this Court has also noted that "where a proposed amended pleading would not

survive a motion to dismiss, it is within a trial court's discretion to deny leave to replead."  *In re*

*Ridley*, 453 B.R. at 77.

Ultimately, the question of leave to replead is committed to the sound discretion of the

court.  As one court has stated, "it is well-established in the Second Circuit that leave to amend

should be granted freely though the district court may exercise its discretion to deny a motion to

amend if there is a good reason for it."  *In re Ashanti Goldfields Sec. Litig.*, No. CV 00-

0717(DGT), 2004 WL 626810, at *2 (E.D.N.Y. Mar. 30, 2004) (citation omitted).

Here, Alliance requests leave to replead, and notes that dismissal with prejudice would be

a harsh result.  The Court notes that this is Alliance's first attempt to state a claim, and that

Alliance has adequately alleged two of the three elements of a Section 523(a)(4) claim.  Based

on the entire record, the Court is satisfied that the "the prospect of a plausible claim is

suggested," but not established, in the Complaint.  *In re Ridley*, 453 B.R. at 77.  For these

reasons, and based on the entire record, leave to replead is granted.

## Conclusion

The Court concludes that the Defendant Jerry Choez has met his burden to show that the

plaintiff, Alliance Shippers, Inc. has not adequately alleged a necessary element of its

nondischargeability claim under Bankruptcy Code Section 523(a)(4).  The Court also concludes

that Alliance has shown that "the prospect of a plausible claim is suggested" by the allegations of

the Complaint.

For these reasons, and based on the entire record, the Motion to Dismiss is granted, and leave to replead is allowed.  An order in accordance with this Memorandum Decision shall be entered simultaneously herewith.



Dated: Brooklyn, New York
      June 3, 2016

                                      Elizabeth S. Stong
                     United States Bankruptcy Judge