UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
In re:                                            Chapter 7

JERRY CHOEZ
and ROSALIN CHOEZ,                                Case No. 15-45404-ess

                    Debtors.

--------------------------------------------------------------x
ALLIANCE SHIPPERS, INC.,                          Adv. Pro. No. 16-01015-ess

                    Plaintiff,

        -against-

JERRY CHOEZ,

                    Defendant.
--------------------------------------------------------------x
JERRY CHOEZ,

                    Counter-Claimant,

        -against-

ALLIANCE SHIPPERS, INC.,

                    Counter-Defendant.

--------------------------------------------------------------x


**MEMORANDUM DECISION ON DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT**


*Appearances*:

Ronald Horowitz, Esq.                     Steven T. Beard, Esq.
Ronald Horowitz, Attorney at Law          Coran Ober P.C.
2561 Moody Boulevard, Suite D             25-02 Francis Lewis Boulevard
Flagler Beach, FL 32136                   Flushing, NY 11358
  *Attorneys for Plaintiff*                 *Attorneys for Defendant*

**HONORABLE ELIZABETH S. STONG**
**UNITED STATES BANKRUPTCY JUDGE**

## Introduction

Before the Court is the motion of defendant Jerry Choez for an order pursuant to Federal Rule of Civil Procedure 56(a), as incorporated by Rule 7056 of the Federal Rules of Bankruptcy Procedure, for summary judgment on his counterclaim and on the claims set forth in the amended complaint of Alliance Shippers, Inc. ("Alliance") in this adversary proceeding. The counterclaim seeks a declaratory judgment stating that the default judgment entered on September 14, 2009, in the case captioned *Felix Produce Corp. v. New Lots Food Corp. and Jerry Choez*, Docket No. 08-CV-5161, in the United States District Court for the Eastern District of New York (the "District Court Action"), is void for lack of personal jurisdiction. The amended complaint seeks a determination that the debt that Mr. Choez initially owed to Alliance's predecessor-in-interest, Felix Produce Corp. ("Felix Produce"), and now owes to Alliance, is nondischargeable pursuant to Bankruptcy Code Section 523(a)(4).

With respect to the counterclaim, Mr. Choez argues that he is entitled to summary judgment on grounds that the default judgment entered in the District Court Action (the "District Court Judgment") is void as a matter of law because he was not served with the summons and complaint in that action. Mr. Choez argues that the certificate of service attached to the complaint in the District Court Action does not adequately describe the person served and states only that "Mr. Choez" was served on January 4, 2009 at the property located at 366 New Lots Avenue, Brooklyn, New York 11207 (the "Property"). Mr. Choez further argues that he was not present at, and his former business New Lots Food Corp. ("New Lots Food") was not located at, the Property on January 4, 2009.

With respect to Alliance's Section 523(a)(4) claim, Mr. Choez argues that he is entitled to summary judgment on grounds that Alliance has not shown the existence of a technical trust under the Perishable Agricultural Commodities Act, 7 U.S.C. §§ 499a-499t ("PACA").  Mr. Choez also argues that Alliance has not shown that he was a trustee under PACA because Alliance did not provide documentary evidence that Felix Produce held a PACA license when it did business with him.  And Mr. Choez argues that Alliance cannot rely on the District Court Action as proof of the existence of a PACA trust because collateral estoppel does not apply to the District Court Judgment.  Accordingly, Mr. Choez argues that Alliance cannot establish any of the three elements of a Section 523(a)(4) claim.

Alliance responds that collateral estoppel applies to the District Court Judgment and that Mr. Choez waived his personal jurisdiction challenge by not raising it in the District Court Action.  Alliance also alleges that it has provided sufficient evidence to show that a genuine dispute as to a material fact exists as to its Section 523(a)(4) claim.

The two matters to be decided by the Court on this motion for summary judgment are first, whether Mr. Choez has shown that there is no genuine dispute as to a material fact that the District Court Judgment is void as a matter of law for lack of personal jurisdiction, and second, whether Mr. Choez has shown that there is no genuine dispute as to a material fact as to at least one necessary element of Alliance's Section 523(a)(4) claim.

## Jurisdiction

Alliance's nondischargeability claim arises under Bankruptcy Code Section 523(a)(4) and is a core matter.  28 U.S.C. § 157(b)(2)(I).  This Court may hear Mr. Choez's counterclaim because it is a "counterclaim[] by the estate against [a] person[] filing [a] claim[] against the estate."  28 U.S.C. § 157(b)(2)(C).  This Court has constitutional authority to enter a final

judgment because the claims alleged in the amended complaint and the counterclaim stem "from the bankruptcy itself." *Stern v. Marshall*, 564 U.S. 462, 499 (2011).  In addition, to the extent that they are not core proceedings, this Court may adjudicate these claims pursuant to Judiciary Code Section 157(c) because the parties have stated their consent to the entry of a final judgment here.  *See Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1940 (2015) (holding that in a non-core proceeding, a bankruptcy court may enter final orders "with the consent of all the parties to the proceeding").

For these reasons, this Court has jurisdiction to consider and enter judgment on these claims under 28 U.S.C. § 1334(b) and the Standing Order of Reference dated August 28, 1986, as amended by order dated December 5, 2012, of the United States District Court for the Eastern District of New York.

## Selected Procedural History

The following procedural and background information is taken from the record in this adversary proceeding, and familiarity with the record is assumed.

## The Chapter 7 Debtors and Related Proceedings

### *The Debtors' First Chapter 7 Case*

On April 8, 2010, Mr. Choez and his wife, Rosalin Choez, filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code, Case No. 10-43026.  On May 25, 2010, the Debtors' bankruptcy case was dismissed pursuant to Bankruptcy Code Section 521(i), effective as of May 25, 2010.  On May 26, 2010, the Debtors' bankruptcy case was closed.

### *The Debtors' Second Chapter 7 Case*

On July 22, 2010, the Debtors filed a second voluntary petition for relief under Chapter 7 of the Bankruptcy Code, Case No. 10-46896.  On September 8, 2010, the Debtors' second

bankruptcy case was likewise dismissed pursuant to Bankruptcy Code Section 521(i), effective as of September 7, 2010.  On September 20, 2010, the Debtors' second bankruptcy case was closed.

*The Debtors' Third Chapter 7 Case*

On November 30, 2015, the Debtors filed a third voluntary petition for relief under Chapter 7 of the Bankruptcy Code, Case No. 15-45404.  The Debtors' third bankruptcy case followed a different path, and on December 28, 2015, the Chapter 7 Trustee, Robert J. Musso, filed a report of no distribution.  And on February 24, 2016, the Debtors each received a discharge.  On January 19, 2016, prior to discharge, Alliance commenced this adversary proceeding seeking a finding that the debt at issue here is nondischargeable pursuant to Bankruptcy Code Section 523(a)(4).

## Background

*The District Court Default Judgment*

In 2009, Felix Produce commenced the District Court Action in the United States District Court for the Eastern District of New York (the "District Court") against Mr. Choez and New Lots Food, a produce business owned and operated by Mr. Choez, seeking payment under PACA for perishable agricultural commodities that Felix Produce sold to New Lots Food.  On September 16, 2009, the District Court entered a default judgment in favor of Felix Produce and against New Lots Food and Mr. Choez, jointly and severally, in the amount of $30,735.45.

*The New Jersey Default Judgments*

After the District Court Action was concluded, and shortly before Mr. Choez's three bankruptcy filings, Alliance brought an action in the Superior Court of New Jersey, Law Division, Middlesex County (the "New Jersey Court"), against Felix Produce, among others, to

4

collect on a debt owed to it.  On October 11, 2013, the New Jersey Court entered a default

judgment in favor of Alliance and against Felix Produce, among others, in the amount of

$23,330.  Alliance brought a second action in the New Jersey Court against Mr. Choez and New

Lots Food, to collect on the District Court Judgment.  On October 20, 2015, the New Jersey

Court entered a default judgment in favor of Alliance and against Mr. Choez and New Lots

Food, among others, in the amount of $25,723.

*This Adversary Proceeding*

On January 19, 2016, Alliance commenced this adversary proceeding by filing a

complaint.  On January 19, 2016, Mr. Choez filed a motion to dismiss.  On February 11 and 29,

2016, the Court held hearings on the motion to dismiss, at which Mr. Choez and Alliance, each

by counsel, appeared and were heard.  By Memorandum Decision dated June 3, 2016, the Court

granted Mr. Choez's motion to dismiss.  *Alliance Shippers, Inc. v. Choez (In re Choez),* 2016

WL 3244861 (Bankr. E.D.N.Y. June 3, 2016).

The Court found that Alliance adequately alleged the first element of a Section 523(a)(4)

claim, that the debt at issue arose in connection with an express or technical trust involving the

entrusting of money or other property to the fiduciary for the benefit of another.  The Court also

found that Alliance adequately alleged the second element of a Section 523(a)(4) claim, that Mr.

Choez acted in a fiduciary capacity with respect to the trust at issue.  But the Court found that

Alliance did not adequately allege the third element of a Section 523(a)(4) claim, that the debt at

issue arose from misconduct by Mr. Choez that constituted a "defalcation" within the meaning of

bankruptcy law.  At the same time, the Court found that "'the prospect of a plausible claim [was]

suggested,'" but not established, and granted Alliance leave to replead.  *In re Choez*, 2016 WL

3244861, at *11 (quoting *Ridley v. Deutsche Bank Nat'l Trust Co. (In re Ridley)*, 453 B.R. 58, 77 (Bankr. E.D.N.Y. 2011)).  This amended complaint followed on June 29, 2016.

In the amended complaint, Alliance alleges that Mr. Choez is or was a person in control of, and responsible for, the disposition of the assets of New Lots Food, including its PACA trust assets.  Am. Compl. ¶ 6, ECF No. 15.  On July 8, 2016, Mr. Choez moved to dismiss the amended complaint.  Mot. to Dismiss, ECF No. 16.  On August 29, 2016, Alliance filed opposition to the motion to dismiss the amended complaint.  Opp., ECF No. 21.  On September 8, 2016, Mr. Choez filed a reply.  Reply, ECF No. 22.  On September 15, 2016, and November 22, 2016, the Court held hearings on the motion to dismiss the amended complaint, at which Mr. Choez and Alliance, each by counsel, appeared and were heard.  On December 28, 2016, the Court issued an oral decision and order denying Mr. Choez's motion to dismiss the amended complaint.

The Court again found that Alliance adequately alleged the first two elements of its Section 523(a)(4) claim.  And as to the third element of Alliance's Section 523(a)(4) claim, the Court found that taken as a whole, Alliance's allegations and the reasonable inferences that they support adequately alleged that Mr. Choez controlled New Lots Food, that New Lots Food and Mr. Choez purchased perishable agricultural commodities in the form of produce, that they did not make payment for that produce, and that they used the proceeds of the sale of that produce for other purposes.  The Court also found that Alliance adequately alleged that Mr. Choez was on notice and aware of these duties with respect to PACA.  For those reasons, and based on the entire record, the Court found that Alliance adequately alleged the third element of its Section 523(a)(4) claim, that the debt at issue arose from misconduct by Mr. Choez that constituted a "defalcation" within the meaning of bankruptcy law.

On January 17, 2017, Mr. Choez filed an answer and counterclaim.  Answer and Countercl., ECF No. 32.  Mr. Choez denies the allegations in the amended complaint, except that venue is proper under 28 U.S.C. § 1409.  In his counterclaim, Mr. Choez seeks a declaratory judgment stating that the District Court Judgment is void as a matter of law.  Mr. Choez asserts that he was not served with the summons and complaint in that action, and as a result, that the District Court did not have personal jurisdiction over him.

On February 6, 2017, Alliance filed an answer to the counterclaim.  Countercl. Answer, ECF No. 33.  Alliance denies the allegations in the counterclaim and raises three affirmative defenses:  first, that the counterclaim fails to state a claim upon which relief can be granted; second, that the counterclaim is barred by the doctrines of collateral estoppel and res judicata; and third, that the counterclaim is barred by the equitable doctrines of waiver, estoppel, and laches.

## *This Motion for Summary Judgment*

On May 10, 2017, Mr. Choez filed this motion for summary judgment.  Mot. for Summ. J., ECF No. 39.  Mr. Choez argues that he is entitled to summary judgment on his counterclaim and on Alliance's Section 523(a)(4) claim.  With respect to his counterclaim, Mr. Choez argues that the District Court Judgment is void as a matter of law on grounds that the District Court lacked personal jurisdiction over him and over New Lots Food.  He asserts that neither he nor New Lots Food was served with the summons and the complaint in the District Court Action.

Mr. Choez states that the process server filed two certificates of service attesting to service on "Mr. Choez" and New Lots Food on January 4, 2009 at the Property.  Def's Mem. at 13, Exs. L and M.  Mr. Choez argues that the process server neither included the first name of the person upon whom service was made, nor provided a description of the person served.  Mr.

Choez also argues that he and New Lots Food ceased having any presence at or connection with the Property on October 21, 2008.  For these and other reasons, Mr. Choez argues that the District Court Judgment is void as a matter of law and that he is entitled to summary judgment on his counterclaim.

With respect to Alliance's Section 523(a)(4) claim, Mr. Choez argues that Alliance cannot prove the first element of its claim, that the debt resulted from a fiduciary defalcation under an express or technical trust.  Specifically, Mr. Choez argues that Alliance did not produce a copy of Felix Produce's PACA license, and instead, relies only on the District Court Action for proof that a PACA trust existed.  Mr. Choez also points to his own sworn testimony that Felix Produce was paid cash on delivery for the produce that it delivered, so that no fiduciary relationship was created.  And Mr. Choez argues, as noted above, that the District Court Judgment is void as a matter of law and even if it is not void, it should not have collateral estoppel effect here.

Mr. Choez also argues that Alliance cannot prove the second element of its Section 523(a)(4) claim, that he acted in a fiduciary capacity with respect to the trust.  Mr. Choez argues that because Alliance cannot show that a PACA trust was created, it also cannot show that Mr. Choez was acting in a fiduciary capacity.

Finally, Mr. Choez argues that Alliance cannot prove the third element of its Section 523(a)(4) claim, that the debt at issue arose from misconduct by Mr. Choez that constituted a "defalcation" within the meaning of bankruptcy law.  Mr. Choez argues that Alliance produced "no evidence or testimony" showing that he acted with the intent to engage in fraud or wrongful conduct, and has come forward with no evidence that he engaged in conscious misbehavior with

any PACA trust assets. Def's Mem. at 19-20. For these and other reasons, Mr. Choez argues that he is entitled to summary judgment on Alliance's Section 523(a)(4) claim.

On June 26, 2017, Alliance filed opposition. Pl's Opp., ECF No. 44. At the outset, Alliance responds that collateral estoppel applies to the District Court Action and that Mr. Choez waived his personal jurisdiction challenge. Alliance argues that, because Mr. Choez did not challenge the District Court Action in his motions to dismiss, and because it has been eight years since the District Court Action was decided and two years since he learned about the District Court Judgment, Mr. Choez should be barred from relitigating the issue now. Alliance also responds that evidence in the District Court Action shows that Mr. Choez was personally served with the summons and complaint.

Next, Alliance responds that Felix Produce, Mr. Choez, and New Lots Food, among others, were producers, dealers, sellers, and purchasers subject to PACA. Alliance also argues that Mr. Choez breached his fiduciary duty under PACA by not paying Felix Produce the approximately $30,000 that it was owed. For these and other reasons, Alliance argues that this motion for summary judgment should be denied.

On July 14, 2017, Mr. Choez filed a declaration and reply memorandum of law (the "Reply"). Declaration and Reply, ECF Nos. 48, 49. Mr. Choez replies that his collateral attack on the District Court Judgment is not barred by the doctrines of collateral estoppel and res judicata. He also argues that the Second Circuit has held that the doctrines of collateral judgment and res judicata do not attach to default judgments entered by federal courts. And Mr. Choez argues that Second Circuit authority holds that there is no time limit with respect to an attack on a void judgment. Mr. Choez also notes that in his first motion to dismiss, he argued that the District Court Judgment was void for lack of personal jurisdiction. Finally, Mr. Choez

argues that Alliance has not come forward with any evidence that Felix Produce had a PACA license, or evidence of defalcation by him.  For these and other reasons, Mr. Choez argues that this motion for summary judgment should be granted.

## The Applicable Legal Standards

### *Rule 56(a) and the Standard for Summary Judgment*

Under Federal Rule of Civil Procedure 56(a), made applicable to this adversary proceeding by Bankruptcy Rule 7056, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A fact is "material" if it "might affect the outcome of the suit under the governing law . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party has the burden of demonstrating the absence of a genuine dispute as to a material fact, and all of the reasonable inferences to be drawn from the underlying facts must be viewed by the court in the light most favorable to the party opposing the motion.  *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 743 (2d Cir. 2003).  Where the defendant seeks summary judgment, it must demonstrate that there is no genuine dispute as to a material fact as to at least one necessary element of the claim.  If it does not, then summary judgment will be denied.  *See Smith v. Goord*, 2008 WL 902184, at *4 (N.D.N.Y. Mar. 31, 2008) (citing *Anderson*, 477 U.S. at 250 n.4), *aff'd*, 375 F. App'x 73 (2d Cir. 2010) (holding that summary judgment should be denied where the moving party does not show that there is no genuine dispute of material fact with respect to any essential element of the claim).

Once the moving party satisfies its initial burden, "the burden then shifts to the nonmoving party to come forward with evidence sufficient to create a genuine dispute as to a material fact for trial." *Silverman v. United Talmudic Academy Torah Vyirah, Inc. (In re Allou Distribs., Inc.)*, 446 B.R. 32, 49 (Bankr. E.D.N.Y. 2011). To defeat a motion for summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, the non-moving party must present "significant probative evidence" that a genuine dispute as to a material fact exists. *Anderson*, 477 U.S. at 255. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine dispute as to a material fact for trial, and summary judgment is appropriate. *Matsushita*, 475 U.S. at 587. "Unsupported allegations in the pleadings thus cannot create a material issue of fact." *In re Eugenia VI Venture Holdings, Ltd.*, 649 F. Supp. 2d 105, 117 (S.D.N.Y. 2008), *aff'd*, 370 F. App'x 197 (2d Cir. 2010) (internal citation omitted).

*Relief from Judgment*

Under Federal Rule of Civil Procedure 60(b)(4), made applicable to this Adversary Proceeding by Federal Rule of Bankruptcy Procedure 9024, "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding" if "the judgment is void." Fed. R. Civ. P. 60(b)(4). As the Second Circuit has noted, "[s]ince 60(b) allows extraordinary judicial relief, it is invoked only upon a showing of exceptional circumstances." *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986). Rule 60(b) is strictly applied, following the tenet that "[a] court's final judgment should not 'be lightly reopened.'"

*Herschaft v. N.Y.C. Campaign Fin. Bd.*, 139 F. Supp. 2d 282, 286 (E.D.N.Y. 2001) (quoting

*Nemaizer*, 793 F.2d at 61).

Rule 60(b) does not designate a forum "for presenting a motion for relief from judgment,

[but] the motion is generally brought in the district court rendering judgment." *Covington*

*Indus., Inc. v. Resintex A.G.*, 629 F.2d 730, 733 (2d Cir. 1980) (citing 12 James Wm. Moore et

al., *Moore's Federal Practice* ¶ 60.28(1) (2d ed. 1979)). In limited circumstances, a district

court may entertain a collateral attack on another district court's judgment. "Although the case

law is somewhat meager, precedent exists supporting the proposition that Rule 60(b)(4) may be

invoked in the registration court to obtain relief from a foreign default judgment attacked as void

for lack of personal jurisdiction over the parties against whom it was rendered." *Covington*

*Indus.*, 629 F.2d at 734 (describing a district court in the Southern District of New York voiding

a judgment of a district court in the Central District of California).

The concept of a void judgment is narrowly construed. A judgment is void, and subject

to relief under Rule 60(b)(4), "only in the rare instance where a judgement is premised either on

a certain type of jurisdictional error or on a violation of due process that deprives a party of

notice or the opportunity to be heard." *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S.

260, 271 (2010). A judgment may be void if the rendering court lacked the power to exercise

personal jurisdiction over the defendant. *See* 12 James Wm. Moore et al., *Moore's Federal*

*Practice* ¶ 60.44 (3d ed. 2017). A judgment may also be void if the rendering court had the

power to exercise personal jurisdiction over the defendant, but the defendant was not properly

served.

12

A certificate or affidavit of service is evidence that a defendant was properly served. "[A] properly filed affidavit of service by a plaintiff is *prima facie* evidence that service was properly effected." *Ahluwalia v. St. George's Univ., LLC*, 63 F. Supp. 3d 251, 260 (E.D.N.Y. 2014). A defendant can "rebut the presumption of proper service" with a "sworn denial of receipt of service." *Old Republic Ins. Co. v. Pacifica Financial Servs. of Am., Inc.*, 301 F.3d 54, 57 (2d Cir. 2002). The defendant himself must swear to "'specific facts to rebut the statements in the process server's affidavits.'" *Old Republic Ins. Co.*, 301 F.3d at 58 (quoting S*kyline Agency, Inc. v. Ambrose Coppotelli, Inc.*, 502 N.Y.S.2d 479, 483-84 (2d Dep't 1986)).

*The Federal Collateral Estoppel Rule*

Several requirements must be met in order for a prior federal judgment to have preclusive effect. As the Second Circuit has observed:

> Federal principles of collateral estoppel, which we apply to establish the preclusive effect of a prior federal judgment, require that "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits."

*Ball v. A.O. Smith Corp.*, 451 F.3d 66, 69 (2d Cir. 2006) (quoting *Purdy v. Zeldes*, 337 F.3d 253, 258 & n.5 (2d Cir. 2003)).

Many courts acknowledge that under federal law, "the general rule is well-established that default judgments lack issue-preclusive effect." *Mishkin v. Gurian (In re Adler, Coleman Clearing Corp.)*, 205 F. App'x 856, 857 (2d Cir. 2006). Put another way, "[t]he majority view is

that collateral estoppel based on default judgments is undesirable." *Artmatic USA Cosmetics v. Maybelline Co.*, 906 F. Supp. 850, 856 (E.D.N.Y. 1995) (citing cases).[1]

As the Second Circuit noted, the "accepted view" is "that the decision of issues not actually litigated, e.g., a default judgment, has no preclusive effect in other litigation." *Abrams v. Interco, Inc.*, 719 F.2d 23, 34 n.9 (2d Cir. 1983). *See Amato v. City of Saratoga Springs*, 170 F.3d 311, 323 (2d Cir. 1999) (Jacobs, J., concurring) (observing that "of course, a default judgment lacks preclusive effect in other litigation").

Bankruptcy courts have also addressed this issue. For example, as one bankruptcy court noted, "[t]he general rule under federal law is that default judgments lack preclusive effect." *DeCurtis v. Ferrandina (In re Ferrandina)*, 533 B.R. 11, 23 n.13 (Bankr. E.D.N.Y. 2015) (citing cases). As another bankruptcy court observed, "[t]he federal rule generally concludes in the case of a default judgment that the issues were not actually litigated and, therefore, preclusive effect should not be given to the earlier default judgment." *Wharton v. Shiver (In re Shiver)*, 396 B.R. 110, 122 (Bankr. S.D.N.Y. 2008). And as this Court recently found, a default judgment does not satisfy the requirement that "the issue was actually litigated and determined in the prior action . . . unless an exception applies." *Wu v. Lin (In re Qiao Lin)*, 2017 WL 4326370, at *21 (Bankr. E.D.N.Y. Sept. 28, 2017).

---

[1]  This Court's decision in *Guggenheim v. Birnbaum (In re Birnbaum)*, 513 B.R. 788, 799-800 (Bankr. E.D.N.Y. 2014) is not to the contrary. There, the Court gave collateral estoppel effect to a District Court default judgment on trademark claims that was entered as a sanction for the defendant's conduct during the case. Default judgments entered as a sanction are one of the recognized exceptions to the general rule that "default judgments lack preclusive effect." *Mishkin v. Gurian (In re Adler, Coleman Clearing Corp.)*, 205 F. App'x 856, 857 (2d Cir. 2006).

Other courts also recognize exceptions to this general rule. As the Second Circuit noted, "Several other circuits have allowed a default judgment entered as a procedural sanction to be accorded preclusive effect in a subsequent action if the sanctioned party's abuse of the litigation process is of sufficiently outrageous severity." *In re Adler, Coleman Clearing Corp.*, 205 F. App'x at 857 n.1. And as one bankruptcy court observed, "an exception to this general rule may be found where a defendant has abused the litigation process." *In re Ferrandina*, 533 B.R. at 23 n.13.

Under the federal collateral estoppel rule, the burden of proving all four requirements lies with the party seeking to apply collateral estoppel. The party arguing for preclusion bears "'the burden of establishing all four elements.'" *Roseman v. Bloomberg L.P.*, 2016 WL 3866375, at *3 (S.D.N.Y June 17, 2016) (quoting *Burberry Ltd. & Burberry USA v. Horowitz*, 2016 WL 1039581, at *5 (S.D.N.Y. Mar. 15, 2016)). This includes "the burden of demonstrating that the opposing party had a full and fair opportunity to litigate the issues." *SEC v. Steinberg*, 2007 WL 922257, at *4 (E.D.N.Y. Mar. 26, 2007) (citing *Flaherty v. Lang,* 199 F.3d 607, 615 (2d Cir. 1999)).

<u>Substantial Identity of Issues.</u>  The first requirement, that the issues are substantially identical in the pending and prior proceedings, calls for the court to ascertain:

> [F]irst, whether the issues presented by this litigation are in substance the same as those resolved [in the prior litigation]; second, whether controlling facts or legal principles have changed significantly since the [prior litigation]; and finally, whether other special circumstances warrant an exception to the normal rules of preclusion.

*Montana v. United States*, 440 U.S. 147, 155 (1979).  *See In re Qiao Lin*, 2017 WL 4326370, at *9.

"Direct identity of issues" is not required for collateral estoppel to apply. *Yash Raj Films (USA) v. Ahmed (In re Ahmed)*, 359 B.R. 34, 40 (Bankr. E.D.N.Y. 2005) (citing *Montana,* 440 U.S. at 155). Courts in this Circuit have found that the issues presented in the two actions need not be absolutely identical, although "the legal standards governing their resolution [must not be] significantly different." *Cerny v. Rayburn*, 972 F. Supp. 2d 308, 316 (E.D.N.Y. 2013). Rather, "it is sufficient that 'the issues presented in [the earlier litigation] are *substantially the same* as those presented by [the later] action.'" *Cerny*, 972 F. Supp. 2d at 316-17 (emphasis added, citations omitted).

Actual Litigation and Determination of the Issue. The second requirement, that the issue was actually litigated and decided in the prior proceeding, is satisfied where the court "addressed all the elements of the statute and cited supporting evidence." *Schulz v. United States*, 244 F. Supp. 3d 307, 311 (N.D.N.Y. 2017). *See In re Qiao Lin*, 2017 WL 4326370, at *9. "The prior decision of the issue need not have been explicit, however, '[i]f by necessary implication it is contained in that which has been explicitly decided.'" *Postlewaite v. McGraw-Hill*, 333 F.3d 42, 48 (2d Cir. 2003) (quoting *Norris v. Grosvenor Mktg. Ltd.*, 803 F.2d 1281, 1285 (2d Cir. 1986)).

The Second Circuit has recognized that when a judgment is entered on default, it reflects "the decision of issues not actually litigated . . . [and] has no preclusive effect in other litigation." *Abrams*, 719 F.2d at 33 n.9. This is consistent with "[t]he general rule under federal law . . . that default judgments lack preclusive effect." *In re Ferrandina*, 533 B.R. at 23 n.13. To be sure, there are exceptions to this rule, including where a defendant has "abused the litigation process." *Id.* But the exceptions are narrow, and as the Second Circuit has observed, they lead to

"preclusive effect in a subsequent action if the . . . abuse of the litigation process is of sufficiently outrageous severity." *In re Adler, Coleman Clearing Corp.*, 205 F. App'x at 857 n.1.

At the same time, a full trial on the merits is not a prerequisite for collateral estoppel to apply. Rather, preclusion is appropriate where "'[t]he issue [was] raised by the pleadings or otherwise placed in issue and actually determined in the prior proceeding.'" *Dolan v. Roth*, 325 F. Supp. 2d 122, 133 (N.D.N.Y. 2004) (quoting *Richardson v. City of new York*, 2004 WL 325631, at *2 (S.D.N.Y. Feb. 20, 2004)), *rev'd in part on other grounds*, 170 F. App'x 743 (2d Cir. 2006).

<u>Full and Fair Opportunity To Litigate the Issue.</u> The third requirement, that the party against whom collateral estoppel is invoked had a full and fair opportunity to litigate the issue, calls for the court to determine whether that party "was fully able to raise the same factual or legal issues" in the prior litigation. *LaFleur v. Whitman*, 300 F.3d 256, 274 (2d Cir. 2002). *See In re Qiao Lin*, 2017 WL 4326370, at *10. As distinct from the "actually litigated" element, the requirement that the party opposing collateral estoppel had a full and fair opportunity to litigate the issue requires the court to examine whether the party "was fully able to raise the same factual or legal issues . . . assert[ed in the prior proceeding]." *Id.*

So, for example, the Second Circuit declined to apply principles of collateral estoppel where the defendant was deprived of a fair opportunity to litigate based on, among other considerations, the trial judge's statements that "clearly abrogated his 'responsibility to function as a neutral, impartial arbiter'" and demonstrated "fundamental misunderstanding of the basis" of the defendant's claim. *Ali v. Mukasey*, 529 F.3d 478, 491 (2d Cir. 2008). Similarly, the Seventh Circuit declined to apply collateral estoppel where an immigration judge used language

17

of religious intolerance, stating that it "taints the proceedings, erodes the appearance of fairness and creates substantial uncertainty as to whether the record below was fairly and reliably developed." *Floroiu v. Gonzales*, 481 F.3d 970, 974 (7th Cir. 2007).

    <u>Necessity of the Issue To Support the Final Judgment.</u>  The fourth and final requirement for collateral estoppel to apply, that the issue previously determined was necessary to support the final judgment, requires the court to consider the elements of the prior claim, and whether a final judgment was entered.  *See In re Qiao Lin*, 2017 WL 4326370, at *10.  This assures that matters that were ancillary to the first determination, and matters that were not finally determined, will not be invoked to bar the consideration of a disputed issue by the second court.  As one Court of Appeals noted, "'for purposes of issue preclusion . . . 'final judgment' includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect.'"  *Wolstein v. Docteroff (In re Docteroff)*, 133 F.3d 210, 216 (3d Cir. 1997) (quoting *Restatement (Second) of Judgments* § 13 (1982)).

*The Elements of a Claim Under Bankruptcy Code Section 523(a)(4)*

    Bankruptcy Code Section 523(a)(4) provides that a "discharge under Section 727 of this title does not discharge an individual debtor from any debt for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."  11 U.S.C. § 523(a)(4).  This "'dischargeability provision has for more than a century been construed narrowly and strictly by the Supreme Court.'"  *Owens v. Owens (In re Owens)*, 2005 WL 387258, at *4 (S.D.N.Y. Feb, 17, 2005) (quoting *In re Gans*, 75 B.R. 474, 488 (Bankr. S.D.N.Y. 1987)), *aff'd*, 155 F. App'x 42 (2d Cir. 2005).

    To prevail on a Section 523(a)(4) claim, a plaintiff must establish three elements:

> First, the debt must result from a fiduciary's defalcation under an "express or technical trust" involving the entrusting of money or other property to a fiduciary for the benefit of another.  Second, the debtor must have acted in a fiduciary capacity with respect to the trust.  Third, the transaction in question must be a "defalcation" within the meaning of bankruptcy law.

*Chao v. Duncan (In re Duncan)*, 331 B.R. 70, 77 (Bankr. E.D.N.Y. 2005) (internal citations omitted).

Under the first element of Section 523(a)(4), "'[a] technical trust is one imposed by statutory or common law and will exist where the statute (1) defines the trust res, (2) identifies the trustee's fiduciary duties, and (3) imposes a trust prior to and without reference to the wrong that created the debt.'"  *E. Armata, Inc. v. Parra* (*In re Parra*), 412 B.R. 99, 104 (Bankr. E.D.N.Y. 2009) (quoting *A.J. Rinella & Co. v. Bartlett* (*In re Bartlett*), 397 B.R. 610, 619 (Bankr. D. Mass. 2008)).  "PACA trusts satisfy the requirements for a technical trust."  *In re Parra*, 412 B.R. at 105.  And pursuant to PACA, a trust is created when a sale of perishable agricultural commodities occurs, until the seller is paid:

> Perishable agricultural commodities received by a commission merchant, dealer, or broker in all transactions, and all inventories of food or other products derived from perishable agricultural commodities, and any receivables or proceeds from the sale of such commodities or products, shall be held by such commission merchant, dealer, or broker in trust for the benefit of all unpaid suppliers or sellers of such commodities or agents involved in the transaction, until full payment of the sums owing in connection with such transactions has been received by such unpaid suppliers, sellers, or agents.

7 U.S.C. § 499e(c)(2).  Produce sellers preserve their PACA trust rights by sending a document entitled "Notice of Intent to Preserve Trust Benefits" to the merchant within thirty days after expiration of the parties' payment terms.  7 U.S.C. § 499e(c)(3).  Alternatively, a licensed PACA produce seller may preserve its PACA trust rights by including language required by the PACA

statute on its invoice to notify the buyer that the produce is sold subject to the PACA trust.  7 U.S.C. § 499e(c)(4).

Under the second element of Section 523(a)(4), the term "fiduciary capacity" is narrowly construed to encompass only relationships arising out of express or technical trusts, or statutorily imposed trusts.  It does not extend to constructive, implied, or resulting trusts.

And under the third element of Section 523(a)(4), the Supreme Court defines "defalcation" in this context as requiring "a culpable state of mind requirement akin to that which accompanies application of the other terms in the same statutory phrase" such as fraud, embezzlement, and larceny.  *Bullock v. BankChampaign, N.A.*, 569 U.S. 267, 269 (2013).  For this element to be established, the Supreme Court has specified that the fiduciary must have acted with actual knowledge, with "willful blindness," or with "bad faith, moral turpitude, or other immoral conduct."  *Bullock*, 569 U.S. at 273.  The Supreme Court rejected the notion that a lower threshold for "defalcation" should apply in the context of Section 523(a)(4), noting that such a definition would capture "'even innocent acts of failure to fully account for money received in trust,'" and would not be appropriate here.  *Bullock*, 569 U.S. at 271 (quoting *Sherman v. SEC (In re Sherman)*, 658 F.3d 1009, 1017 (9th Cir. 2011)).

To similar effect, the Second Circuit has held that "defalcation under [Bankruptcy Code Section] 523(a)(4) requires a showing of conscious misbehavior or extreme recklessness – a showing akin to the showing required for scienter in the securities law context."  *Denton v. Hyman (In re Hyman)*, 502 F.3d 61, 68 (2d Cir. 2007).  And as this court has observed, "[d]efalcation . . . requires a showing of 'conscious misbehavior or extreme recklessness.'"

*Rahman v. Seung Min Park (In re Seung Min Park)*, 2011 WL 1344495, at *4 (Bankr. E.D.N.Y.

Apr. 8, 2011) (quoting *In re Hyman*, 502 F.3d at 68).

<u>**Discussion**</u>

Mr. Choez seeks an order granting summary judgment in his favor on his counterclaim

and Alliance's Section 523(a)(4) nondischargeability claim.  As to the counterclaim, Mr. Choez

argues that the District Court Judgment is void as a matter of law for lack of personal

jurisdiction.  And as to the Section 523(a)(4) claim, Mr. Choez argues that Alliance cannot show

that the debt at issue arose from his defalcation while acting in a fiduciary capacity in connection

with a PACA trust.

On this motion for summary judgment, the questions to be answered by the Court are

whether Mr. Choez has established that there is no genuine dispute as to a material fact as to

each element of his counterclaim, and whether Mr. Choez has met that standard as to at least one

necessary element of Alliance's Section 523(a)(4) nondischargeability claim.  That is, the Court

considers whether Mr. Choez, not Alliance, has met his burden as the movant on this motion for

summary judgment to show that there is no genuine dispute as to a material fact with respect to

these matters.

<u>*Mr. Choez's Counterclaim*</u>

As to the counterclaim, a judgment is void, "only in the rare instance where [it] is

premised either on a certain type of jurisdictional error or on a violation of due process that

deprives a party of notice or the opportunity to be heard."  *United Student Aid Funds,* 559 U.S. at

271.  A judgment may also be void if the rendering court had the power to exercise personal

jurisdiction over the defendant, but the defendant was not properly served.  *See* 12 James Wm.

Moore et al., *Moore's Federal Practice* ¶ 60.44 (3d ed. 2017). Accordingly, and as noted, to prevail on his counterclaim on summary judgment, Mr. Choez must show that there is no genuine dispute as to a material fact that this Court has the authority to void the District Court Judgment, and that grounds to void that judgment exist, because he was not properly served in the District Court Action.

### Alliance's Bankruptcy Code Section 523(a)(4) Claim

As to the Section 523(a)(4) claim, a debt is nondischargeable if it is the result of the debtor's fraud or defalcation while acting in a fiduciary capacity. Accordingly, and as noted, to prevail at trial on a Section 523(a)(4) claim, Alliance must establish three elements. First, Alliance must show that the debt at issue arose in connection with an express or technical trust involving the entrusting of money or other property to a fiduciary for the benefit of another, here a PACA trust. Second, Alliance must show that Mr. Choez acted in a fiduciary capacity with respect to that trust. And third, Alliance must show that the transaction in question constituted a "defalcation" within the meaning of bankruptcy law. To defeat a Section 523(a)(4) claim on summary judgment, Mr. Choez must show that there is no genuine dispute as to a material fact with respect to at least one of these necessary elements, so that Alliance cannot prevail as a matter of law.

Alliance's Section 523(a)(4) claim stems from PACA. The Perishable Agricultural Commodities Act was enacted in 1930 during the Great Depression, and reflects the intent of Congress to protect and promote fair trade in the fruit and vegetable industry. PACA protects the interests of sellers of perishable agricultural commodities by requiring purchasers to hold the proceeds of these products in trust for the sellers until they are paid. As described by the Second

22

Circuit, "[t]he statute provides growers and sellers of agricultural produce with a 'self-help tool enabling them to protect themselves against the abnormal risk of losses resulting from slow-pay and no-pay practices by buyers or receivers of fruits and vegetables.'" *Coosemans Specialties, Inc. v. Gargiulo*, 485 F.3d 701, 705 (2d Cir. 2007) (quoting *D.M. Rothman & Co. v. Korea Commercial Bank of N.Y.*, 411 F.3d 90, 93 (2d Cir. 2005)).  PACA intersects with the Bankruptcy Code when entities and individuals whose business dealings are governed by PACA are involved in a bankruptcy case, and the rights and obligations created by PACA may affect the dischargeability of certain debts.

### *Whether Mr. Choez Has Shown that He Is Entitled to Summary Judgment on His Counterclaim for a Declaratory Judgment*

In his counterclaim, Mr. Choez alleges that he was not served with the summons and complaint in the District Court Action and, as a result, that the District Court did not have personal jurisdiction over him.  In this motion for summary judgment, Mr. Choez argues that neither he nor New Lots Food had any connection with the Property on January 4, 2009 – the date that the process server attested to service on Mr. Choez and New Lots Food at that location. He argues that because the certificates of service in the District Court Action identify the person served as only "Mr. Choez" and do not describe the person served, they are insufficient.  Def's Mem. at 13-14.  Mr. Choez also argues that evidence of the agreement to surrender the Property, evidence of the UCC foreclosure sale, and his own deposition testimony all support his claim that he was not served.

Mr. Choez further argues that case law supports his claim that this Court can void the District Court Judgment for lack of personal jurisdiction.  He argues that in *Covington Industries, Inc. v. Resintex A.G.*, 629 F.2d 730 (2d Cir. 1980), the Second Circuit found that a district court

23

can collaterally attack a judgment entered by a different district court.  And he argues that in *United States Lines, Inc. v. Am. Steamship Owners Mut. Prot. and Indem. Ass'n* (*In re US Lines, Inc.*), 197 F.3d 631 (2d Cir. 1999), the Second Circuit found that a bankruptcy court can sustain a collateral attack on a state court judgment.

Alliance responds that Mr. Choez has waived his right to challenge the District Court Judgment on the basis of personal jurisdiction.  Alliance argues that because Mr. Choez did not challenge the District Court Judgment in his first two motions to dismiss, and because it has been eight years since the District Court Action was decided and two years since Mr. Choez learned about the District Court Judgment, he should be barred from raising the issue now.  Alliance also argues that the certificates of service attached to the District Court Action are evidence that Mr. Choez was personally served with the summons and complaint.

As a threshold matter, the Court must determine whether this is the proper forum to consider a claim that seeks to void the District Court Judgment.  This Court has previously held that the rendering court is the proper forum to review whether a party has violated a court order. *See Geltzer v. Brizinova* (*In re Brizinova*), 565 B.R. 488, 503 (Bankr. E.D.N.Y. 2017).  As this Court has noted, such a "rule makes sense, for several reasons [including that it] promotes clarity and predictability." *In re Brizinova*, 565 B.R. at 503.  For similar reasons, the District Court that entered the District Court Judgment, and not this Court, is the appropriate forum to consider Mr. Choez's challenge to that judgment.

And separately, the record shows that Alliance filed two certificates of service in the District Court Action.  The record also shows that the process server attests that he served Mr. Choez on January 4, 2009, at the Property.  As previously stated, "a properly filed affidavit of

24

service by a plaintiff is *prima facie* evidence that service was properly effected." *Ahluwalia*, 63

F. Supp. 3d at 260.  "'[T]o rebut the statements in the process server's affidavits,'" Mr. Choez

"himself must swear to 'specific facts.'"  *Old Republic Ins. Co.*, 301 F.3d at 58 (quoting S*kyline*

*Agency, Inc. v. Ambrose Coppotelli, Inc.*, 502 N.Y.S.2d 479, 483-84 (2d Dep't 1986)).  And as

the record shows, while Mr. Choez affirms under penalty of perjury that the first time he learned

about the money he owed to Felix Produce was "when [he] got the purported default judgment

from New Jersey," this is not sufficient to establish the absence of a genuine dispute as to a

material fact on this issue.  Beard Decl., ECF No. 41, Ex. H (Deposition of Jerry Choez) ("Choez

Dep.") at 31:21-22.  In addition, Mr. Choez has not cited, and the Court's research has not

uncovered, controlling or persuasive authority that supports the argument that this Court has the

ability to void the District Court Judgment under the circumstances present here.

That is, Alliance has offered prima facie evidence in the form of certificates of service

that Mr. Choez was served with the summons and complaint in the District Court Action.  And

Mr. Choez has not rebutted this prima facie evidence with credible and persuasive sworn

testimony or other conclusive evidence.  And in all events, it does not appear that under the

circumstances present here, there are grounds for this Court, as a unit of the District Court, to

void the District Court Judgment for lack of personal jurisdiction more than eight years after that

judgment was entered.

For these reasons, and based on the entire record, Mr. Choez has not shown that there is

no genuine dispute as to a material fact as to his counterclaim, that the District Court Judgment is

void for lack of personal jurisdiction.

***Whether Mr. Choez Has Shown that He Is Entitled to Summary Judgment on Alliance's
Bankruptcy Code Section 523(a)(4) Nondischargeability Claim***

Mr. Choez seeks the entry of an order granting summary judgment in his favor on Alliance's Section 523(a)(4) nondischargeability claim.  He argues that there is no genuine dispute as to a material fact that Alliance cannot show the existence of a PACA trust, and separately, that there is no genuine dispute as to a material fact that the District Court Judgment does not have collateral estoppel effect here.

Alliance responds that summary judgment in favor of Mr. Choez is not warranted. Alliance argues that collateral estoppel applies to the District Court Judgment, and that even if it does not, the evidence shows that Felix Produce was a PACA licensee and that Mr. Choez breached his fiduciary duty under PACA when he did not pay Felix Produce the approximately $30,000 that it was owed.  At a minimum, Alliance argues, Mr. Choez has not shown that there is no genuine dispute as to a material fact as to these matters.

### *Whether Mr. Choez Has Shown that There Is No Genuine Dispute as to a Material Fact that the Debt at Issue Arose in Connection with an Express or Technical Trust*

The first element of Alliance's Section 523(a)(4) claim is that the debt at issue arose in connection with an "express or technical trust," here, a PACA trust, involving the entrusting of money or other property to a fiduciary for the benefit of another.  *In re Duncan*, 331 B.R. at 77. To prevail on summary judgment, Mr. Choez must show that there is no genuine dispute as to a material fact as to at least one element of this claim.  That is, as to the first element, Mr. Choez must show that there is no genuine dispute as to a material fact that a PACA trust did not exist.

Mr. Choez alleges that Alliance "is not a beneficiary of a statutory trust under" PACA and that he "is not, and was never, a trustee of any PACA trust in favor of either Felix Produce Corp." or Alliance.  Answer ¶¶ 6, 7.  Mr. Choez argues that Alliance has not provided any evidence of a PACA trust, and relies only on the District Court Action for proof that a PACA

26

trust existed.  He also argues that the District Court Judgment is void as a matter of law and even

if it is not void, it should not have collateral estoppel effect here.

Mr. Choez also argues that "[s]ince the default judgment was obtained by Plaintiff's

processor-in-interest [sic] in federal court, it does not preclude Debtor-Defendant Jerry Choez

from contesting the presence of a PACA trust."  Reply at 2.  And he argues that because Alliance

has not produced a copy of Felix Produce's PACA license, Alliance cannot prove that Felix

Produce was authorized to submit invoices bearing the PACA language to establish a PACA

trust.

Alliance responds the District Court Judgment should have collateral estoppel effect here.

Additionally, Alliance argues that even if the District Court Judgment is void, "there is no

evidence in the record, whatsoever, that supports [Mr. Choez's] outlandish assertions. . . . To the

contrary, the evidence is overwhelmingly in favor of Alliance.  The Felix Declaration and the

Debtor's own deposition testimony confirmed that Felix and the Debtor were PACA licensees."

Pl's Opp. at 6.

As previously noted, the burden of establishing the requirements of federal collateral

estoppel lies with the party seeking to apply collateral estoppel.  *Roseman*, 2016 WL 3866375, at

\*3.  This includes "the burden of demonstrating that the opposing party had a full and fair

opportunity to litigate the issues."  *Steinberg,* 2007 WL 922257, at \*4 (citing *Flaherty,* 199 F.3d

at 615).

That is, in order for collateral estoppel to apply to the District Court Judgment, Alliance

must prove the following:  that there is identity of the issues, that the issue was actually litigated

and determined in the prior case, that Mr. Choez had a full and fair opportunity to litigate the

issue in the prior case, and that determination of the issue was necessary to support the judgment in the prior case. And to show that collateral estoppel does not apply to the District Court Judgment, Mr. Choez must show that Alliance cannot establish at least one of these necessary criteria.

The Court will consider the four criteria in turn.

Whether Mr. Choez Has Shown that Alliance Cannot Establish that There Is Identity of the Issues. The first criterion for whether collateral estoppel applies to bar relitigation of an issue is whether there is identity of the issues between the prior case and the present one. As the Supreme Court has stated, this calls for the court to determine whether "the issues presented by this litigation are in substance the same as those resolved" in the earlier proceeding. *Montana*, 440 U.S. at 155. For Mr. Choez to prevail on his argument that collateral estoppel does not apply here, he must show in the alternative that Alliance cannot establish that there is identity of the issues.

Under the first element of Section 523(a)(4), "'[a] technical trust is one imposed by statutory or common law and will exist where the statute (1) defines the trust res, (2) identifies the trustee's fiduciary duties, and (3) imposes a trust prior to and without reference to the wrong that created the debt.'" *In re Parra*, 412 B.R. at 104 (quoting *In re Bartlett*, 397 B.R. at 619). "PACA trusts satisfy the requirements for a technical trust." *In re Parra*, 412 B.R. at 105. And pursuant to PACA, when a sale of perishable agricultural commodities occurs, a trust is created until the seller is paid. 7 U.S.C. § 499e(c)(2). A licensed PACA produce seller may preserve its PACA trust rights by including language required by the PACA statute on its invoice to notify the buyer that the produce is sold subject to a PACA trust. 7 U.S.C. § 499e(c)(4).

Here, the record shows that in the District Court Action, Felix Produce alleged that it established a PACA trust with Mr. Choez and New Lots Food. The record also shows that Felix Produce alleged that it complied with PACA's notice provisions by including the statutory language on the written invoices sent to New Lots Food. And the record shows that the District Court held that Felix Produce established liability under PACA against Mr. Choez.

Accordingly, Mr. Choez has not shown that Alliance cannot establish that there is identity of the issues with respect to the first element of Alliance's Section 523(a)(4) claim, that an express or technical trust exists.

<u>Whether Mr. Choez Has Shown that Alliance Cannot Establish that the Existence of a PACA Trust Was Actually Litigated and Determined in the District Court Action.</u> The second criterion for whether collateral estoppel applies is whether the issue was actually litigated and determined in the prior action. For Mr. Choez to prevail on his argument that collateral estoppel does not apply here, he must show in the alternative that Alliance cannot establish that the existence of a PACA trust was actually litigated and determined in the District Court Action.

Under the federal collateral estoppel rule, the second criterion is not satisfied in the context of a default judgment, unless an exception applies. The Second Circuit has recognized that a default judgment reflects "the decision of issues not actually litigated . . . [and] has no preclusive effect on other litigation." *Abrams*, 719 F.2d at 33 n.9. Here, the default judgment in the District Court Action was entered after Mr. Choez did not respond, and the issue of whether a PACA trust existed was not "actually litigated." The District Court Judgment also does not come within one of the exceptions to this rule, such as that it was entered as a sanction.

Accordingly, Mr. Choez has shown that Alliance cannot establish that the existence of a PACA trust was actually litigated and determined in the District Court Action.

<u>Whether Mr. Choez Has Shown that Alliance Cannot Establish that He Had a Full and Fair Opportunity To Litigate the Existence of a PACA Trust in the District Court Action.</u>  The third criterion for whether collateral estoppel applies is whether the defendant had a full and fair opportunity to litigate the issue in the prior action.  This criterion does not require that a trial have occurred, or even that the party against whom collateral estoppel is invoked have appeared and defended the action.  For Mr. Choez to prevail on his argument that collateral estoppel does not apply here, he must show in the alternative that Alliance cannot establish that he had a full and fair opportunity to litigate the existence of a PACA trust in the District Court Action.

As noted above, Mr. Choez has testified that the first time he learned about the money he owed to Felix Produce was "when [he] got the purported default judgment from New Jersey." Choez Dep. at 31:21-22.  Mr. Choez also argues that "[s]ince the default judgment was obtained by Plaintiff's processor-in-interest [sic] in federal court, it does not preclude Debtor-Defendant Jerry Choez from contesting the presence of a PACA trust."  Reply at 2.

The record shows that Alliance filed two certificates of service in the District Court Action.  The record also shows that the process server attests that he served Mr. Choez on January 4, 2009, at the Property.  And the record shows that Mr. Choez did not seek to vacate the District Court Judgment once he learned of it.

Accordingly, Mr. Choez has not shown that Alliance cannot establish that he had a full and fair opportunity to litigate the existence of a PACA trust in the District Court Action.

30

<u>Whether Mr. Choez Has Shown that Alliance Cannot Establish that Determination of the Existence of a PACA Trust Was Necessary To Support the District Court Judgment.</u>  The fourth criterion for whether collateral estoppel applies is whether determination of the issue was necessary to support a final judgment in the prior action.  This criterion is satisfied when the issue was necessary to support a valid and final judgment on the merits in the prior case, and it prevents collateral estoppel from being invoked when the prior determination is not final, or the issue was not necessary to that case.  For Mr. Choez to prevail on his argument that collateral estoppel does not apply here, he must show in the alternative that Alliance cannot establish that the determination of the existence of a PACA trust was necessary to support the District Court Judgment.

As noted above, and as reflected in the District Court Judgment, the District Court held that Mr. Choez was liable for damages under PACA.  Liability for damages under PACA requires the existence of a PACA trust.  7 U.S.C. § 499e.  As such, the finding that a PACA trust was created was necessary to support the District Court Judgment.

Accordingly, Mr. Choez has not shown that Alliance cannot establish that the determination of the existence of a PACA trust was necessary to support the District Court Judgment.

*                *                *

In sum, Mr. Choez has shown that Alliance cannot establish at least one of the four criteria of federal collateral estoppel, that the question of the existence of a PACA trust was actually litigated and determined in the District Court Action.  For these reasons, and based on

the entire record, Mr. Choez has shown that there is no genuine dispute as to a material fact that

the findings in the District Court Judgment are not entitled to collateral estoppel effect here.

But the record also shows that Alliance does not rely solely on the District Court

Judgment to show that Felix Produce held a PACA license, and that a PACA trust existed here.

PACA describes the steps necessary to preserve a PACA trust as follows:

> The bill or invoice statement must include the information required by the last
> sentence of paragraph (3) and contain on the face of the statement the following:
> "The perishable agricultural commodities listed on this invoice are sold subject to
> the statutory trust authorized by section 5(c) of the Perishable Agricultural
> Commodities Act, 1930 (7 U.S.C. 499e(c)). The seller of these commodities
> retains a trust claim over these commodities, all inventories of food or other
> products derived from these commodities, and any receivables or proceeds from
> the sale of these commodities until full payment is received."

7 U.S.C. § 499e(c)(4).  And here, Alliance provides evidence, in the form of invoices, that

indicates that Felix Produce used the required statutory language on its ordinary and usual

invoice and billing statements to provide notice of its intent to preserve the protections of a

PACA trust.

As the moving party, Mr. Choez bears the burden to show that there is no genuine dispute

as to a material fact that a PACA trust was not created.  Mr. Choez argues that Alliance relies

only on the District Court Action for proof that a PACA trust existed because Alliance did not

separately produce a copy of Felix Produce's PACA license.  Here, he has shown that the

District Court Judgment does not have collateral estoppel effect here because it was entered on

default.  But he does not succeed on his second argument, that Felix Produce did not have a

PACA license, because he has not provided persuasive evidence that a PACA license did not

exist.  And Alliance has responded with evidence, including in the form of invoices bearing the

necessary statutory language, that Felix Produce was a PACA licensee while doing business with Mr. Choez, and therefore, that a PACA trust was created.

For these reasons, and based on the entire record, Mr. Choez has not shown that there is no genuine dispute as to a material fact as to the first element of Alliance's Section 523(a)(4) claim, that the debt arose in connection with a PACA trust.

*Whether Mr. Choez Has Shown that There Is No Genuine Dispute as to a Material Fact that He Did Not Act in a Fiduciary Capacity with Respect to the Trust*

The second element of Alliance's Section 523(a)(4) claim is that Mr. Choez "acted in a fiduciary capacity with respect to the trust." *In re Duncan*, 331 B.R. at 77 (citations omitted). And to prevail on summary judgment, Mr. Choez must show that there is no genuine dispute as to a material fact as to at least one element of this claim. That is, as to the second element, Mr. Choez must show that there is no genuine dispute as to a material fact that he did not act in a fiduciary capacity with respect to the trust.

For purposes of a nondischargeability claim under Section 523(a)(4), the term "fiduciary capacity" is narrowly construed to include only relationships arising out of express or technical trusts, or statutorily imposed trusts. It does not extend to constructive, implied, or resulting trusts. As previously stated, a PACA trust is a "technical trust" for the purposes of Section 523(a)(4).

Mr. Choez argues that "there is no proof in any of the materials disclosed during the course of discovery that show that a PACA trust was ever created, and thus there is nothing showing that Defendant acted in a fiduciary capacity." Def's Mem. at 19. Alliance responds that Mr. Choez acted in a fiduciary capacity because "[he] was the sole owner of New Lots . . .

[he] alone purchased produce from a PACA licensee and produce dealer . . . and only [Mr. Choez] made the decision whether to pay Felix." Pl's Opp. at 10.

As the moving party, the burden is on Mr. Choez to show that there is no genuine dispute as to a material fact that a PACA trust was not created, and that he was not acting in a fiduciary capacity with respect to that trust. *See Anderson*, 477 U.S. at 249, 255. Here, the record shows that Mr. Choez has not supported his argument with persuasive evidence that a PACA license did not exist. And Alliance has offered evidence, including in the form of invoices bearing the necessary statutory language, indicating that a PACA trust was created, and therefore, that Mr. Choez was acting in a fiduciary capacity. That is, at a minimum, Mr. Choez has not shown that there is no genuine dispute as to a material fact that a PACA trust was created.

For these reasons, and based on the entire record, Mr. Choez has not shown that there is no genuine dispute as to a material fact that Alliance cannot establish the second element of its Section 523(a)(4) claim, that Mr. Choez was acting in a fiduciary capacity with respect to a trust.

*Whether Mr. Choez Has Shown that There Is No Genuine Dispute as to a Material Fact that He Did Not Commit a Fiduciary Defalcation with Respect to the Trust*

The third element of Alliance's Section 523(a)(4) claim is that Mr. Choez committed a fiduciary defalcation with respect to the debt at issue. *In re Duncan*, 331 B.R. at 77. And to prevail on summary judgment, Mr. Choez must show that there is no genuine dispute as to a material fact as to at least one element of this claim. That is, as to the third element, Mr. Choez must show that there is no genuine dispute as to a material fact that he did not commit a defalcation as a fiduciary within the meaning of Section 523(a)(4).

For a fiduciary defalcation to be established, the Supreme Court has specified that the fiduciary must have acted with actual knowledge, with "willful blindness," or with "bad faith,

34

moral turpitude, or other immoral conduct." *Bullock*, 569 U.S. at 268. To similar effect, the

Second Circuit has held that "defalcation under [Bankruptcy Code Section] 523(a)(4) requires a

showing of conscious misbehavior or extreme recklessness – a showing akin to the showing

required for scienter in the securities law context." *In re Hyman*, 502 F.3d at 68 (citations

omitted). Further, this court has observed that defalcation "requires a showing of 'conscious

misbehavior or extreme recklessness.'" *In re Seung Min Park,* 2011 WL 1344495, at *4

(quoting *In re Hyman*, 502 F.3d at 68).

In this motion for summary judgment, Mr. Choez argues that even if he was acting in a

fiduciary capacity, he did not act with the "intent to engage in any fraud, [or] wrongful conduct,

[and] that there [is no] evidence that [he] engaged in any conscious misbehavior with any alleged

PACA trust assets." Def's Mem. at 20. He argues that Alliance "needs to show proof of an

intentional wrongdoing by Defendant to meet the element of defalcation in order to have the debt

declared nondischargeable. Discovery has ended, and it has not produced any evidence of

defalcation." Reply at 7.

Alliance responds that the record shows that Mr. Choez knew that he purchased produce

from a PACA licensee, Felix Produce, and that he did not pay Felix Produce the approximately

$30,000 that it was owed. Alliance argues that Mr. Choez does not have any written receipts

from Felix Produce showing proof of payment. And Alliance argues that the invoices with the

word "paid" written on them that Mr. Choez relies on as proof of payment are insufficient

because Mr. Choez acknowledges that he himself wrote the word "paid" on those invoices. Pl's

Opp. at 10. Alliance further argues that its own copies of the invoices attached to the District

Court Action are not marked with the word "paid." *Id.*

Here, the record shows that the parties dispute whether Mr. Choez knew that Felix Produce was a PACA licensee.  The record also shows that Mr. Choez acknowledges that he wrote the word "paid" on his copies of the invoices from Felix Produce.  Choez Dep. at 47:6-23.  Mr. Choez states that he wrote "paid" whenever he paid Felix Produce cash on delivery.  Choez Dep. at 46:16-25.  And the record shows that while the invoices submitted by Mr. Choez are marked "paid," the invoices submitted by Alliance do not bear this notation.

Additionally, the record shows that Mr. Choez testified that he did not ask Felix Produce whether it had a PACA license, and that he did not consider whether Felix Produce had a PACA license when he began to do business with it:

> Q:    And did you ask [Felix Produce] whether he had a PACA license?
> A:    No.
> Q:    Did you assume that he did?
> A:    No.
> Q:    Why not?
> A:    Because he was a – he was a produce guy that bought produce from the terminal.
> Q:    Hunts Point?
> A:    It was the Brooklyn, the Brooklyn.
> Q:    Not the Bronx.  So am I correct to understand what you just said is that you didn't care whether he, he being Felix, was PACA licensed or not?
> A:    Not at that moment.

Choez Dep. at 28:12-25.

The record also shows that Mr. Choez testified that he understood the importance of paying a produce supplier subject to a PACA trust:

> Q:    Because you know the consequences and I'm not even sure you do know the consequences if a produce buyer such as yourself doesn't pay a produce supplier such as Felix and resells that produce which you did I assume, right, over the course of time you resold his produce –

36

> A:    Right.
> Q:    -- you took those sales proceeds and used them for other
>       purposes, paying the lights, paying the rent, paying
>       employees, go on and on and on, you understand the
>       consequences if you do that under PACA because you're a
>       PACA licensee, correct?
> A:    Right.

Choez Dep. at 60:12-24.

As the moving party, the burden is on Mr. Choez to show that there is no genuine dispute as to a material fact that he did not act with actual knowledge, "willful blindness," or "bad faith, moral turpitude, or other immoral conduct," with respect to the debt at issue. *Bullock*, 569 U.S. at 268. And here, the record is unclear. Alliance has offered substantial and persuasive evidence that points to the conclusion that Mr. Choez acted with actual knowledge and "willful blindness" with respect to the debt at issue. And while Mr. Choez has offered plausible alternative explanations as to his conduct, and supported those explanations with evidence, he has not established that there is no genuine dispute as to a material fact that he did not act with actual knowledge or willful blindness.

For these reasons, and based on the entire record, Mr. Choez has not shown that there is no genuine dispute as to a material fact that Alliance cannot establish the third element of its Section 523(a)(4) claim, that the debt at issue arose from misconduct by Mr. Choez that constituted a "defalcation" within the meaning of bankruptcy law.

*            *            *

In sum, Mr. Choez has not shown that there is no genuine dispute as to a material fact as to the first, second, or third elements of Alliance's Section 523(a)(4) claim, that the debt Mr. Choez owes Alliance is nondischargeable.

37

## **Conclusion**

For the reasons stated herein, and based on the entire record, Mr. Choez has not shown that there is no genuine dispute as to a material fact as to his counterclaim, that the District Court Judgment is void for lack of personal jurisdiction.  In addition, Mr. Choez has not shown that there is no genuine dispute as to a material fact as to any of the elements of Alliance's Section 523(a)(4) claim, that a PACA trust existed, that he acted in a fiduciary capacity, and that his actions amounted to a fiduciary defalcation with respect to the trust within the meaning of bankruptcy law.

For these reasons, and based on the entire record, the motion for summary judgment is denied.  An order in accordance with this Memorandum Decision will be entered simultaneously herewith.



**Dated: Brooklyn, New York**
      **November 20, 2017**

                                                            **Elizabeth S. Stong**
                                     **United States Bankruptcy Judge**